UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **John J. Coleman,** )<br> )<br>**Plaintiff,** )<br> )<br>v. )<br> )<br>**Drug Enforcement Administration,** )<br> )<br>**Defendant.** )<br> ) | Civil No. 1:14-cv-00315 (APM) |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

In this Freedom of Information Act ("FOIA") case, Defendant Drug Enforcement Administration ("DEA") produced over 1,900 pages of documents to Plaintiff John J. Coleman. Plaintiff filed this suit to challenge two aspects of the DEA's response. First, he contends that the DEA's search was deficient in multiple respects and thus not reasonably calculated to produce all responsive records. He asks the court to compel the DEA to broaden its search and to look for more responsive records. Second, he asserts that the DEA wrongfully denied him a statutory fee waiver. Although the agency ultimately decided not to charge him a fee for the records that it produced, Plaintiff nevertheless seeks a declaration from the court that the DEA's decision to deny him a fee waiver was unlawful under FOIA.

Both parties have moved for summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, the court holds that the DEA did not conduct an adequate search in response to Plaintiff's request because it failed to search the office of the Deputy Assistant Administrator of the Office of Diversion Control, an office likely to contain responsive records. In all other respects, the DEA's search was reasonable. In addition, because Plaintiff has not

established that the DEA's decision to deny him a fee waiver is likely to cause him *future* injury, the court denies Plaintiff's request for declaratory relief on the ground that Plaintiff lacks standing. The parties' cross motions for summary judgment thus are both granted in part and denied in part.

## II. BACKGROUND

Plaintiff John J. Coleman is the president of Drug Watch International, an organization dedicated to drug abuse prevention and education. Pl.'s Mot. for Summ. J., ECF No. 19, at 1 [hereinafter Pl.'s Mot.]. Plaintiff previously worked at the DEA for 33 years, rising to the level of Assistant Administrator for Operations before he retired. Decl. of John Coleman, ECF No. 19-2, ¶¶ 3, 5 [hereinafter Coleman Decl.].

On October 25, 2012, Plaintiff submitted a FOIA request to the DEA seeking the disclosure of nine categories of documents relating to the proposed reclassification of carisoprodol[1] as a Schedule IV drug, as well as the rescheduling of hydrocodone.[2] Def.'s Mot. for Summ. J. [hereinafter Def.'s Mot.], Ex. A, ECF No. 17-4, at 2-3 [hereinafter FOIA Request]. He also sought a public-interest fee waiver. *See* FOIA Request.[3] Plaintiff argued that disclosure was in the public interest because he intended "to write about how the government drug regulatory agencies schedule controlled substances and how petitions for doing so are handled by the respective federal agencies[.]" *Id.* at 2.

---

[1] Carisoprodol is a prescription muscle relaxant and a Schedule IV controlled narcotic. Drug Enforcement Administration, Carisoprodol (March 2014), http://www.deadiversion.usdoj.gov/drug_chem_info/carisoprodol/carisoprodol.pdf.
[2] Hydrocodone is a prescription opioid pain reliever and Schedule II controlled narcotic. Drug Enforcement Administration, Hydrocodone (October 2014), http://www.deadiversion.usdoj.gov/drug_chem_info/hydrocodone.pdf.
[3] The FOIA statute provides that: "Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

The DEA acknowledged receipt of Plaintiff's FOIA request on November 29, 2012. However, it determined that Plaintiff's request was for commercial rather than public-interest use and denied his fee waiver request. Decl. of Katherine Myrick, ECF No. 17-3, ¶ 8 [hereinafter Myrick Decl.]. On February 5, 2013, Plaintiff filed an appeal to the Department of Justice's Office of Information Policy ("OIP") contesting the DEA's fee decision. He also complained that the fee determination was rendered more than 20 working days after its receipt, in violation of the statutory 20-working day limit for responding to such requests. *Id.* ¶ 9. On September 11, 2013, the OIP remanded the decision to the DEA for reconsideration of the fee waiver request, *id.* ¶ 11, whereupon the DEA again denied Plaintiff's fee waiver, *id.* ¶ 12. Plaintiff again appealed the fee waiver denial, but no formal decision issued before Plaintiff filed this suit on February 26, 2014. *Id.* ¶¶ 13-15.

As to Plaintiff's records request, the DEA initially did not process any documents because of the pending fee waiver dispute. *Id.* ¶ 18. Although the DEA never answered Plaintiff's second appeal, the agency decided that it could not deny Plaintiff a fee waiver because it had not responded to his fee request in a timely manner. *Id.* Thereafter, the DEA commenced a search for responsive records. *Id.* The DEA's FOIA Unit reviewed records found in two offices: the Office of Diversion Control and the Office of Chief Counsel. *Id.* ¶¶ 17-20. On October 17, 2014, eight months after Plaintiff filed suit, the DEA released 1,906 pages of responsive records without assessing a fee. *Id.* ¶ 16. It also released another 79 pages on November 3, 2014, again without assessing a fee. *Id.*[4]

---

[4] The DEA deleted some material from the responsive records, invoking FOIA Exemption (B)(6), which protects the privacy of third parties mentioned in responsive documents. *Id.* ¶ 16 (citing 5 U.S.C. § 552(b)(6)). Plaintiff does not contest the applicability of Exemption (B)(6) here.

### III. DISCUSSION

#### A. Legal Standard

Most FOIA cases are appropriately resolved on a motion for summary judgment. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). "To prevail on summary judgment . . . the defending 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). To carry its burden, the agency may submit a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Production of such an affidavit allows a requester to challenge, and a court to assess, the adequacy of the search performed by the agency. *Id*. "Agency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). Summary judgment based on affidavits is not warranted, however, if the affidavits are "controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (citations omitted).

#### B. Adequacy of the Search

The first issue before the court is whether the DEA performed an adequate search. The DEA contends that it conducted an adequate search reasonably designed to locate responsive records and that it adequately described that search in the agency's affidavits. Plaintiff disagrees, arguing that: (1) the search was unreasonably restricted to only two offices when other offices were likely to contain responsive records; (2) the failure of the search to disclose any email

correspondence is itself proof of inadequacy; and (3) the agency failed to adequately describe the search in the affidavits it submitted to the court.

     *1.*  *Whether the DEA's Search Was Unreasonably Restricted*

       a.  <u>The DEA's description of the search conducted</u>

   In response to Plaintiff's FOIA request, the DEA identified two offices—the Office of Diversion Control and the Office of Chief Counsel—as most likely to contain responsive records. Myrick Decl. ¶ 17. The DEA then tasked each with conducting a search for records. *Id.*

   The Office of Diversion Control was selected based on its involvement in the scheduling of prescription drugs such as hydrocodone and carisoprodol. *Id.* Based upon consultation with the Executive Assistant to the Office of Diversion Control—the individual most knowledgeable about scheduling actions—the agency limited its search only to one component of the Office of Diversion Control, the Drug and Chemical Evaluation Section ("ODE"), which was deemed most likely to possess responsive materials. *Id.* ¶ 19. Within the ODE, the Section Chief performed an electronic search of both his files and the ODE share drive. Supp. Decl. of Katherine Myrick, ECF No. 22-1, ¶ 4 [hereinafter Myrick Supp. Decl.]. The search was conducted using the key words "carisoprodol" and "hydrocodone," as well as the specific information contained in Plaintiff's October 25, 2012, request, namely, dates and agency names. *Id.* He also searched hard copy files for responsive records. *Id.* All responsive records were then turned over to the FOIA Unit. *Id.* After the complaint was filed in this case, a second search was conducted, but no new information was uncovered. Myrick Decl. ¶ 19.

   The DEA also searched a second office, the Office of Chief Counsel ("OCC"), which is the office within the DEA responsible for representing the agency in administrative litigation. The DEA searched the OCC because Plaintiff's FOIA request sought copies of discovery materials

either produced by the DEA or introduced as evidence during the course of a DEA administrative hearing on carisoprodol. *Id.* ¶ 17. Within the OCC, the DEA identified a single attorney as most likely to have knowledge about the location of responsive records based on her involvement in the scheduling of carisoprodol. *Id.* ¶ 20. That attorney determined that responsive documents would most likely be held in electronic form in her email, personal storage drive, or a shared office database. *Id.* The attorney searched these locations for responsive records using the term "carisoprodol" and also performed a visual search of all locations. *Id.* All responsive records were turned over to the FOIA Unit. *Id.*

In addition, 79 pages of responsive records were released to Plaintiff based on consultations with other agencies such as the Department of Health and Human Services ("HHS") and the Substance Abuse and Mental Health Services Administration. *Id.* ¶ 21.

      b. <u>Plaintiff's argument that the DEA should have searched additional offices</u>

Plaintiff first argues that the DEA failed to conduct an adequate search for responsive records because it unreasonably restricted its search to only two offices. As proof of the search's inadequacy, Plaintiff points to two pieces of correspondence that he received in response to his FOIA request, which he claims suggest the involvement of other agency components. One letter, dated March 29, 1996, was sent by the DEA Deputy Administrator to the Assistant Secretary for Health at HHS, requesting from HHS "a scientific and medical evaluation of the available data and a scheduling recommendation for carisoprodol" ("March 1996 Letter"). Pl.'s Mot., Ex. B, ECF No. 19-2, at 12. The March 1996 Letter further stated that the DEA staff was directed to make relevant information available to HHS and that the Deputy Assistant Administrator of the Office of Diversion Control would "act as [the] liaison for this exchange of information." *Id.* at 14. A second letter, dated July 28, 2004, was sent by the DEA Administrator to HHS requesting

"a scientific and medical evaluation and a scheduling recommendation from [HHS] in order that this agency may reach its final determination on the petition to reschedule hydrocodone combination products" ("July 2004 Letter"). Pl.'s Mot., Ex. C, ECF No. 19-2, at 16. Like the March 1996 Letter, the July 2004 Letter also stated that the DEA staff was directed to make relevant information available to HHS and that the Deputy Assistant Administrator of the Office of Diversion Control would "act as [the] liaison for this exchange of information." *Id.* at 18. Based on these letters, Plaintiff argues that the DEA should have searched the offices of: (1) the DEA Administrator; (2) the DEA Deputy Administrator; (3) the DEA Assistant Administrator for Operations; and (4) the DEA Deputy Assistant Administrator for the Office of Diversion Control. Pl.'s Reply to Def.'s Mot. for Summ. J., ECF No. 24, at 3 [hereinafter Pl.'s Reply].

FOIA requires agencies to conduct searches that are "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. "[T]he agency cannot limit its search" to only one location "if there are others that are likely to turn up the information requested." *Id.* In other words, the adequacy of a search is "measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). "Speculative claims about the existence of additional documents are insufficient to rebut the presumption of good faith," *Span v. DOJ*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citations omitted), but an agency cannot ignore "*clear leads* . . . [that] may indicate . . . other offices that should have been searched." *Rollins v. U.S. Dep't of State*, 70 F. Supp. 3d 546, 550 (D.D.C. 2014) (emphasis added). "Such leads may indicate, for example, other offices that should have been searched, additional search terms that should been used, or

records custodians who should have been consulted." *Id.* With regard to whether or not the existence of additional records is "speculative," "the proper inquiry is whether the requesting party has established a sufficient predicate to justify searching for a particular type of record." *Campbell v. DOJ*, 164 F.3d 20, 28-29 (D.C. Cir. 1998) (citation omitted); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) ("[I]f an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden.").

*Campbell* is illustrative of an agency's obligation to follow "clear leads." There, the plaintiff received records from the FBI that referred to the possible existence of responsive records in other databases. 164 F.3d at 27. Plaintiff asserted that the FBI's search was inadequate because of its failure to search those locations. *Id*. The FBI responded that a search of those databases was not required because historically such searches rarely uncovered responsive information. *Id.* The Court of Appeals did not question the FBI's assertion that the databases rarely contained responsive information; it nevertheless held that the FBI could not ignore that the produced documents pointed to the possible existence of responsive material in those databases. "An agency has discretion to conduct a standard search in response to a general request, but it must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry." *Id.* at 28. The Court of Appeals explained that, although the FBI's initial search assumption was reasonable, it became "untenable" once it discovered information suggesting the existence of other responsive material. *Id.*

Applying the foregoing principles, the court finds that the 1996 and 2004 Letters constituted the type of "clear lead" that required the DEA to expand its initial search to include the office of the Deputy Assistant Administrator. The DEA's failure to search that office rendered its

search inadequate. *See Campbell*, 164 F.3d at 27-28; *Ctr. For Nat'l Sec. Studies*, 215 F. Supp. 2d 94, 110 (D.D.C. 2002), *aff'd in part, rev'd in part on other grounds*, 331 F.3d 918 (D.C. Cir. 2003) (directing the agency to search for additional responsive information when a disclosed document indicated the "existence of earlier relevant documents"). The 1996 and 2004 Letters designated the Deputy Assistant Administrator's office as the "liaison" with HHS for the "exchange of information" about the two drugs that would become the subject of Plaintiff's FOIA request. The Deputy Assistant Administrator, therefore, at some point, likely came into possession of material responsive to Plaintiff's FOIA request. As a result, the DEA simply could not ignore that office, absent a specific reason not to conduct a search there. The DEA presented no such reason on this record.[5] *See Campbell*, 164 F.3d at 27 (observing that the agency had not offered any evidence to rebut the plaintiff's claim that documents produced pointed to the possible existence of information in other databases).

The DEA argues that it did not have a duty to search additional offices because it "is a small agency" and therefore could rely on "the head of DEA's Operations Division and the Section Chief of ODE," who are "the experts . . . in determining the office most likely to have the responsive materials." Def.'s Reply to Pl.'s Mot. for Summ. J., ECF 22, at 5. The court has no qualms with the DEA's initial approach to the search. Consulting with those who have expertise in where to locate documents is a laudable practice. But the court must evaluate the "reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception." *Campbell*, 164 F. 3d at 28. Here, even though the

---

[5] The court recognizes that the DEA consulted with HHS and another agency as to the release of 79 pages of documents, Def.'s Mot., Ex. I, ECF No. 17-4, at 1, and ultimately released those pages, *id.*, Ex. J. Thus, it may be that the DEA already has disclosed those documents that might be located within the office of the Deputy Assistant Administrator. However, that mere prospect, without more, does not relieve the DEA of the obligation to search that office for responsive material.

DEA's original assumption about where documents might be found was reasonable, once it located the 1996 and 2004 Letters, it had an obligation to follow the lead that the Letters presented and search the Deputy Assistant Administrator's office, unless it had reason to believe that the office would not possess any documents or only duplicate documents.

Although the court agrees with Plaintiff that the DEA's search was inadequate because it did not look for responsive material within the Deputy Assistant Administrator's office, the court disagrees with Plaintiff that the DEA was required to search the offices of the DEA Administrator and the Deputy Administrator. Although the 1996 and 2004 Letters originated from those officials, the Letters themselves do not constitute the type of "clear lead" that would suggest that their offices likely would possess responsive materials. The two Letters are official requests sent by high-ranking agency officials—the DEA Administrator, who is the head of the agency, and the Deputy Administrator, who is second in command—to initiate an inter-agency exchange of information and recommendation, but which leave the actual implementation of the request to subordinate officials. The Letters do not contemplate a future role for either the Administrator or the Deputy Administrator—unlike the Deputy Assistant Administrator—regarding the drugs' scheduling, such that one might reasonably expect those offices to possess responsive documents (other than the Letters themselves). Not searching those offices therefore was reasonable.

Plaintiff makes one final argument about the scope of the search. He contends that the DEA should have searched the office of the DEA Assistant Administrator for Operations, which was the position that Plaintiff himself held from 1991 to 1994, and is now called the Operations Division Chief of Operations. Supp. Decl. of John Coleman, ECF No. 24-1, ¶ 8 [hereinafter Coleman Supp. Decl.]. Although Plaintiff contends that there is "undisputed evidence" that the Assistant Administrator was involved in the subject matter of his FOIA Request, *id.* ¶ 10, he has

not provided any evidence to support his assertion. There is no mention of the Assistant Administrator for Operations' office in either the 1996 Letter or the 2004 Letter. To the extent that Plaintiff has a "hunch," based on his experience, that the Assistant Administrator's office is likely to possess responsive records, it is not the kind of factual predicate that justifies ordering a search of that office. *See Campbell*, 164 F.3d at 28-29.

### 2. Whether the Lack of Emails Renders the DEA's Search Inadequate

Next, Plaintiff asserts that the DEA's failure to produce any emails shows that it failed to conduct an adequate search. Pl.'s Mot. at 12. To support this argument, Plaintiff attested that, when he was an agency official, he and his colleagues used email as the primary mechanism for intra-agency communications and that, based on his experience, agency officials likely used email to communicate about the subject matter of his FOIA request. Coleman Decl. ¶ 9.

"The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994)). Agency affidavits describing those searches are afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). A declarant's assertion that it "strains credulity" that certain documents do not exist "amounts to nothing more than mere speculation . . . which is not enough to undermine the determination that the agency conducted an adequate search for the requested records." *Morley*, 508 F.3d at 1120 (citations omitted) (internal quotation marks omitted); *see also Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (although it was "unexpected" that the agency's search turned up only a few emails, that fact alone does not render the search inadequate).

The court finds that the mere absence of emails, without more, does not render the DEA's search inadequate. The attorney within the OCC who was identified as most likely to have knowledge about the location of responsive records, searched her email, personal storage drive, and a shared office database. Myrick Decl. ¶ 20. The ODE Section Chief performed an electronic search of both his files and the ODE shared drive, utilizing key search terms like "carisoprodol," "hydrocodone," and the specific information requested by Plaintiff in his FOIA Request. Myrick Supp. Decl. ¶ 4. These are, in the court's view, appropriate and reasonable steps to take in order to search for materials responsive to Plaintiff's request. Plaintiff's experience at the DEA and his expectation that his request would produce emails, standing alone, cannot overcome the "presumption of good faith" that must be accorded to agency declarations. *SafeCard Servs., Inc.*, 926 F.2d at 1200.

        3.      *Whether the DEA's Affidavits Adequately Described the Search*

Plaintiff's final argument challenges the description of the search in the DEA's affidavits. Pl.'s Mot. at 11-12. Plaintiff contends that the Myrick Declaration and the Supplemental Myrick Declaration do not adequately describe the search methodology used by the DEA and fail to meet the legal burden of demonstrating that an adequate search was performed. Pl.'s Reply at 4-5. Specifically, as to the search conducted within the ODE, Plaintiff argues that the affidavits provided little information about search methodology other than the search terms. *Id.* at 5. He also asserts that the affidavits lacked detail on the files searched in the ODE, *id.* at 6-7, and that the description of the physical search for hard copies failed to provide an adequate identification, description, or explanation of the filing system, *id.* at 9. Plaintiff also asserts similar arguments about the search conducted within the OCC. *Id.* at 9-10.

While "[a]gency affidavits must be . . . 'relatively detailed and non-conclusory . . . and submitted in good faith,'" *SafeCard*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc.*, 692 F.2d at 771), they are not required to "set forth with meticulous documentation the details of an epic search," *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam) (explaining that an affidavit describing a search with "reasonable specificity" is adequate for summary judgment even though it could have been more detailed). Rather, to win at the summary judgment stage, the agency must provide "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oglesby*, 920 F.2d at 68 (holding that an agency affidavit was inadequate because it did not (1) explain why the search method was reasonably calculated to uncover relevant documents; (2) identify the search terms; or (3) explain how the search was conducted). Unless the record leaves "substantial doubt as to the sufficiency of the search," summary judgment for the agency is proper. *Dorsey v. Executive Office for U.S. Attorneys*, 926 F. Supp. 2d 253, 256 (D.D.C. 2013) (citation omitted) (internal quotation marks omitted) (affidavit stating that the agency's search, which used the plaintiff's name as a search term and was limited to the only office likely to contain responsive records, was adequate under FOIA).

Except for the agency's failure to search the one office discussed above, the court harbors no doubts about the sufficiency of the DEA's search. The affidavits explained why the OCC and the ODE were the offices most likely to possess responsive documents and how the DEA came to that conclusion. Myrick Decl. ¶¶ 17, 19. They described the search terms used in both the OCC and the ODE searches. *Id.* ¶ 20; Myrick Supp. Decl. ¶ 4. And they specified the files searched and the persons who performed the searches. Myrick Decl. ¶ 20; Myrick Supp. Decl. ¶ 4. Such detail satisfies the agency's obligation under *SafeCard*.

C.      **Declaratory Relief**

Even though the DEA released nearly 2,000 pages of records free of charge, Plaintiff nevertheless seeks a declaration from this court that he was entitled to (1) a public-interest fee waiver and (2) a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(viii), which prohibits an agency from assessing any search fees when it fails to meet its statutory deadlines in processing a FOIA request. Compl., ECF No. 1, at 7-8. Plaintiff claims that he is entitled to such relief because the fee waiver denial is part of an unlawful agency pattern or practice. Pl.'s Mot. at 17. To support his claim, Plaintiff cites a separate FOIA request he made four years earlier in 2008, which resulted in a decision by the Fourth Circuit that the DEA improperly used FOIA fee assessments to delay the processing of his FOIA request and that it improperly denied his request for a public-interest fee waiver. Coleman Decl. ¶¶ 10-11; Decl. of Daniel J. Stotter, ECF No. 21-3, ¶ 7.

As a threshold matter, the court must determine whether Plaintiff has standing to seek declaratory relief. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). The "question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," *id.*, which the "party invoking federal jurisdiction bears the burden of establishing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted). To establish standing, a plaintiff must demonstrate "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Sierra Club v. Jewell*, 764 F.3d 1, 5 (D.C. Cir. 2014) (citations omitted) (internal quotation marks omitted).

At the summary judgment stage, the plaintiff "faces a higher burden in meeting the elements of standing than when faced with a motion to dismiss." *Nat'l Whistleblower v. U.S.*

*Dep't of Health and Human Servs.*, 839 F. Supp. 2d 40, 46 (D.D.C. 2012) (citation omitted) (internal quotation marks omitted).  Specifically, a plaintiff can no longer rest on "general factual allegations of injury" to support standing, as he could at the motion to dismiss stage.  *Lujan*, 504 U.S. at 561 (citations omitted).  Instead, a plaintiff must "'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true."  *Lujan*, 504 U.S. at 561 (citations omitted).

Plaintiff undoubtedly suffered injury caused by the DEA's refusal to grant him a fee waiver—the denial resulted in a substantial delay in his receipt of responsive material.  *See* Myrick Decl. ¶ 18 (conceding that the DEA's processing of documents was put on hold because of fee dispute); *see also Zivotofsky ex rel. Ari Z. v. Sec'y of State,* 444 F.3d 614, 617 (D.C. Cir. 2006) ("Anyone whose [FOIA] request for specific information has been denied has standing to bring an action[.]").  That injury, however, occurred in the past.  And past injury does not automatically portend *future* injury and confer standing to seek injunctive relief.  As the Supreme Court stated in *O'Shea v. Littleton*:  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  414 U.S. 488, 495-96 (1974).  To obtain prospective relief Plaintiff must "show that [he] is likely to suffer a future injury."  *See Citizens for Responsibility and Ethics in Washington (CREW) v. DHS*, 527 F. Supp. 2d 101, 105 (D.D.C. 2007).

On this requirement, Plaintiff has fallen short.  To establish that he is likely to suffer future injury, Plaintiff has submitted a declaration stating that he is the president of Drug Watch International, a non-governmental organization dedicated to "drug abuse prevention and education."  Coleman Decl. ¶ 10.  He has made more than a half-dozen FOIA requests to the DEA in the past ten years, though he has not specified in what capacity—Plaintiff also is the president

of the Prescription Drug Research Center, "a consultancy firm providing risk management services to the pharmaceutical industry." *Id.* ¶ 9; Pl.'s Mot., Ex. A, ECF-19-2, at 3. Critically, Plaintiff has not averred that he has a pending FOIA request before the DEA; that he intends to make FOIA requests to the DEA in the future; or that, in connection with a future request, he will seek to invoke the public-interest fee waiver. *See* Coleman Decl. ¶¶ 2, 10-11.

Absent such factual assertions, Plaintiff cannot show that he is "realistically threatened by a repetition of his [past] experience." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). His claim of future injury is simply too speculative and remote to give him standing. *See CREW*, 527 F. Supp. 2d at 106 (holding that FOIA plaintiff failed to establish standing for injunctive relief where it did not have a pending request or explain "how frequent[ly] these requests are made, which agencies are subject to these requests, and whether (or when) [plaintiff] expects to file future FOIA requests"); *American Historical Ass'n v. Nat'l Archives and Records Admin.*, 310 F. Supp. 2d 216, 227-28 (D.D.C. 2004) (holding that the plaintiffs lacked standing to challenge an Executive Order concerning access to presidential records where the plaintiffs had "no outstanding requests" for records, even though there was a "significant likelihood that [they] would seek records again"); *cf. Newport Aeronautical Sales v. U.S. Dep't of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) (finding that a plaintiff whose business depended on continually requesting and receiving FOIA documents had sufficiently pleaded concrete future harm). Therefore, Plaintiff lacks standing to obtain the declaratory relief he seeks.[6]

---

[6] The issue before the court also may be characterized as one of mootness, rather than standing. *See CREW*, 527 F. Supp. 2d at 105 (while standing is evaluated "as of the time the suit is filed," later events, such as "whether the agency eventually responds to the FOIA request, implicate the related doctrine of mootness"). Those issues are closely intertwined, and even if analyzed for mootness, plaintiff cannot bring his claim for declaratory relief without making a case that he will be injured in the future. *See City of Houston v. U.S. Dep't of Housing and Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994) ("[T]his circuit's case law provides that if a plaintiff's specific claim has been mooted, it may nevertheless seek declaratory relief forbidding an agency from imposing a disputed policy in the future, so long as the plaintiff has standing to bring such a forward-looking challenge and the request for declaratory relief is ripe."); *see also Pub. Emps. for Envtl. Responsibility v. U.S. Dep't of the Interior*, Civ. No. 06-182 (CKK), 2006 WL 3422484,

The main case relied upon by Plaintiff, *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988), does not compel a contrary conclusion. There, the Court of Appeals acknowledged the general rule that "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform with respect to the particular records that were requested." *Id.* at 491 (citation omitted). The court, however, recognized an exception to that rule, holding that, "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* (citation omitted). In *Payne* itself, the court held that the plaintiff's challenge to an agency's policy or practice was not moot where the agency conceded that it was following an "impermissible practice" in evaluating FOIA requests. *Id.*

*Payne* does not alter the outcome here, however, as that case did not eliminate or weaken the constitutional requirement of future injury to establish standing for prospective relief. There, the plaintiff was a "regular[ ]" FOIA requester, whose business depended on obtaining information about government contracts through FOIA requests. *Id.* at 488. He "sought to show—and the [agency] [ ] conceded—that the appellees [were] following an 'impermissible practice' in evaluating FOIA requests, and that *[the Plaintiff would] suffer 'continuing injury due to this practice.*'" *Id.* at 491 (quoting *Better Gov't Ass'n v. U.S. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986) (emphasis added)). The Court of Appeals held that the plaintiff had standing to challenge the agency practice, finding that it was "clear that Payne's challenge is not moot." *Id.*

---

at *9 (D.D.C. Nov. 28, 2006) (recognizing that while "*Payne* and other cases indicate that declaratory relief may be appropriate even though a plaintiff's specific claim regarding a FOIA request is moot," a court will generally grant declaratory relief if "there exists some cognizable danger of recurrent violation").

As the court observed in *National Whistleblower Center v. U.S. Dep't of Health and Human Services*, 839 F. Supp. 2d 40 (D.D.C. 2012), "it is beyond dispute in *Payne* that the plaintiff had suffered a concrete injury, and the court's conclusion that his claim was not moot was premised on his demonstrating a likelihood of continuing injury in the future." *Id.* at 47. Therefore, while *Payne* permits a plaintiff to challenge an agency policy or practice, it also requires the plaintiff to establish likely future injury that is both concrete and imminent in order to do so. Because Plaintiff has not established that the DEA's denial of a fee waiver is likely to cause him future injury, he lacks standing to challenge its policy or practice with respect to those waivers.[7]

## IV. CONCLUSION AND ORDER

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted in part and denied in part, and Plaintiff's Cross-Motion for Summary Judgment is granted in part and denied in part. On or before October 29, 2015, the DEA must conduct a search of the office of the Deputy Assistant Administrator of the Office of Diversion Control and either turn over any responsive records or represent that no additional documents responsive to Plaintiff's FOIA request were found. As this matter is not final, the court will defer judgment on whether Plaintiff is entitled to reasonable attorney's fees.

Dated: September 29, 2015

Amit P. Mehta
United States District Judge

---

[7] Plaintiff also cites another Court of Appeals decision, *Byrd v. United States Environmental Protection Agency*, 174 F.3d 239 (D.C. Cir. 1999), in support of his position. *See* Pl.'s Mot. at 17. However, *Byrd* is distinguishable for a number of reasons including the fact that counsel for the defendant in that case conceded at oral argument that one of the policies that plaintiff complained of "might occur in the future." 174 F.3d at 244 n.4 (citation omitted). Likewise, the Supreme Court's decision in *Super Tire Engineering v. McCorkle*, 416 U.S. 115 (1974), is inapposite because there the case for future injury was clear. *Id.* at 121-22.